IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| -vs- | )<br>)  Civil Action No. 06-711 |
| MICHAEL RIZZI, | )<br>)<br>) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

## SYNOPSIS

In this civil action, the sole issue before the Court in both Plaintiff's Complaint and pending Motion for Summary Judgment is whether Defendant's debt to an employee benefit Plan is dischargeable in Defendant's Chapter 11 bankruptcy. For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND FACTS

This action was initially filed as an adversary proceeding in bankruptcy court, in Defendant's personal bankruptcy action. Defendant was president of Lomik Construction Corporation ("Lomik"), and a trustee and fiduciary of the Lomik Construction Corporation 401(k) Plan (the "Plan"), a plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002 et seq. The Complaint was subsequently withdrawn from the bankruptcy court, and joined with a related ERISA

matter, filed in this Court at Docket No. 06-547. In the ERISA matter, the parties stipulated that Defendant was a fiduciary of the Plan, that he failed to ensure that certain employee contributions and interest were remitted into the Plan, that he violated various provisions of ERISA, and that he was liable for any resulting losses. The stipulation expressly exempted Defendant from admitting to allegations that he participated knowingly in, or undertook to conceal actions, that were violations of ERISA, or that he and Lomik knew or should have known that the other violated ERISA. A default judgment was entered in the ERISA matter, holding Defendant liable for losses to the Plan, in the amount of $21,238.94 plus interest in the amount of $6,495.90..

In brief, it is undisputed that Defendant failed to remit to the Plan certain employee contributions and related interest, and remitted certain contributions late. Defendant asserts that his failures were due to human or computer error. Defendant testified that the computer crashed several times, and that he could not provide the dates of the crashes. Similarly, Defendant could not identify any particular human errors. At certain times, he decided not to make the employee plan contributions, and made such decisions when the corporation's money was tight. He testified that the decision was his not to deposit money into the Plan for twelve of the payroll dates at issue, but also testified, "These–most of these dates or a lot of them that's what was lost in the files and different things. I mean, I could

say it was my decision, but a lot of I wasn't aware of that it wasn't paid."[1]

He further testified that he made such decisions "a few weeks, a couple of weeks worth" of contributions at a time, in order to first accommodate paychecks to employees. Additionally, he stated, "[W]e were paying everything that we thought we were supposed to." Further, he testified that the employees knew that this was occurring. It is further undisputed that Defendant did not monitor what was actually deposited into the Plan with what should have been deposited into the Plan, or take steps to ensure remission of the missing contributions and related interest.[2] He testified that he was not aware of the interest.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to

---

[1] "The court does not isolate one piece of evidence, however, in ruling on a motion for summary judgment. It looks at all the evidence presented and construes the facts in a light most favorable to plaintiff." Stephens v. City of Topeka, 33 F. Supp. 2d 947, 956 (D. Kan. 1999) It is appropriate, therefore, that I consider all of the testimony submitted by Plaintiff in support of its Motion, even if neither party specifically points to those lines in the transcript. See, e.g., Owen v. Soundview Fin. Group, Inc., 54 F. Supp. 2d 305, 306 n. 1 (S.D.N.Y. 1999).

[2] Defendant filed no response to Plaintiff's statement of undisputed facts. As Plaintiff posits, I will consider the appropriate factual statements only as undisputed, pursuant to Local Rule 56.1. See Benko v. Portage Area Sch. Dist., No. 03-233J, 2006 U.S. Dist. LEXIS 40573, at *2 (W. D. Pa. June 19, 2006); Change the Climate v. Mass. Bay Transp. Auth., 202 F.R.D. 43 (D. Mass. 2001) ("'Facts' means historical facts, not mixed-law fact assertions and not evaluative determinations," under local rule similar to W.D.Pa. L.R. 56.1). Nevertheless, I recite certain of the legal conclusions and mixed assertions herein by way of background.

the party opposing the motion. <u>International Raw Materials, Ltd. V. Stauffer Chem. Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. <u>United States v. Onmicare, Inc.</u>, 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). "[A]ll doubts must be resolved in favor of the non-moving party." <u>Zappan v. Pa. Bd. of Prob. & Parole</u>, 152 Fed. Appx. 211, 216 (3d Cir. 2005).

On a claim of nondischargeability under § 523(a)(4), the burden is on the party claiming non-dischargeability, and the applicable level of proof is a preponderance of the evidence. <u>See</u> <u>Grogan v. Garner</u>, 498 U.S. 279, 285, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); <u>In re Schlessinger</u>, 208 Fed. Appx. 131, 133 (3d Cir. 2006).

## III. DISCUSSION

Plaintiff now argues, in its Motion, that the debt is non-dischargeable as a matter of law under Section 523(a)(4) of the Bankruptcy Code. That Section provides that an individual debtor shall not be discharged from a debt "for...defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4).[3] Defendant opposes summary judgment, <u>inter alia</u>, on grounds that Plaintiff has failed to establish culpable conduct, and therefore has not shown "defalcation," as required by the Bankruptcy

---

[3] A debt "for" defalcation means a debt arising from or out of defalcation. <u>See, e.g.</u>, <u>In re McCormick</u>, 283 B.R. 680, 683 (Bankr. W.D. Pa. 2002).

4

Code; Plaintiff, in turn, argues that no culpability is required.[4] Instead, Plaintiff argues, the fact that Defendant failed to account for the funds, and violated ERISA, is sufficient.

The Bankruptcy Code does not define the term "defalcation," and thus the term has been subject to widely varying interpretations. At one end of the spectrum, for example, the United States Court of Appeals for the Fourth Circuit relied solely on Black's Law Dictionary, and concluded that defalcation includes negligence or innocent mistake.[5] See, e.g., Rwanda v. Uwimana, 274 F.3d 806, 811 (4th Cir. 2001). In contrast, the United States Court of Appeals for the First Circuit engaged in a broader analysis that included several dictionaries, as well as the Bankruptcy Code and related policies, and determined that "defalcation requires something close to a showing of extreme recklessness." In re Baylis, 313 F.3d 9, 17-20 (1st Cir. 2002).

The United States Court of Appeals for the Third Circuit has yet to speak on this issue. Our Court of Appeals has, however, observed that exceptions to discharge under Section 523(a) must be strictly construed in favor of the debtor. Schlessinger, 208 Fed. Appx. at 133. This construction is intended to comport with the "fresh

---

[4] Because the issue of defalcation alone provides grounds for denying Plaintiff's Motion, I need not address Defendant's other arguments. Instead, I will assume, without deciding, that Defendant was a fiduciary of a trust at the time of his subject actions. As with the definition of defalcation, courts differ in their consideration of whether ERISA fiduciary status is sufficient to create Section 523(a)(4) fiduciary status. See Board of Trs. v. Bucci, No. 06-4164, 2007 Fed. App. 0251P, at **10-15 (6th Cir. July 3, 2007) (collecting cases).

[5] Black's Law Dictionary defines defalcation, in pertinent part, as "[l]oosely, the failure to meet an obligation; a non-fraudulent default." Black's Law Dictionary 448 (8th ed. 2004).

5

start" policy behind the Bankruptcy Code. <u>Chao v. Duncan</u>, 331 B.R. 70, 76 (Bankr. D.N.Y. 2005). Defining "defalcation" to include negligent or innocent conduct – particularly based solely on a single dictionary definition – would do violence to both the principle of narrow construction and the "fresh start" policy, and lead to punitive and undesirable results.[6]

Accordingly, I am persuaded by the recent analysis set forth in <u>Silver Care Ctr. v. Parks</u>, No. 05-37154, 2007 Bankr. LEXIS 2372 (Bankr. D.N.J. July 10, 2007). For the same reasons set forth therein, and without defining the required level of culpability, I likewise find that defalcation, as used in Section 523(a)(4), means "'something more' than mere negligence or innocent mistake...." <u>Id.</u> at *53. Instead, some showing of affirmative misconduct is required. <u>Id.</u> at *51.[7] Accordingly, a violation of ERISA is not <u>per se</u> defalcation, although it may constitute defalcation depending on its attributes. <u>Cf.</u>, <u>In re Eavenson</u>, 243 B.R. 160, 167-68 (N.D. Ga. 1999).

---

[6] The cases cited by Plaintiff, are unpersuasive, for various reasons. <u>See</u>, <u>e.g.</u>, <u>American Ins. Co. v. Lucas</u>, 41 B.R. 915 (W.D. Pa. 1984), contains no analysis or citation to authority, and <u>In re McCormick</u>, 283 B.R. 680 (Bankr. W.D. Pa. 2002) relies on <u>Uwimana</u>, which I have found unpersuasive. Moreover, in <u>In re Specialty Plastics, Inc.</u>,113 B.R. 915 (Bankr. W.D. Pa. 1990), the court determined that the debtor usurped a corporate opportunity, which constituted defalcation; in passing, the court observed that negligence could constitute defalcation. On appeal, this Court stated:

> "Because we have vacated the Bankruptcy Court's judgment that appellant usurped a corporate opportunity, we must also vacate its judgment that such usurpation constituted defalcation within the meaning of the bankruptcy code. However, if the Bankruptcy Court finds that appellant's actions constituted improper self-dealing, it should also consider whether such self-dealing constitutes defalcation."

<u>Committee of Unsecured Creditors of Specialty Plastic v. Doemling</u>, 127 B.R. 945, 953 (W.D. Pa. 1991).

[7] In reaching this conclusion, I do not hold that an intent to defraud is required. <u>Cf. Baylis</u>, 313 F.3d at 22-23 (requiring more than innocence or negligence, but not fraud).

6

In this matter, I will assume, without deciding, that Defendant's conduct constituted defalcation. The mere fact that he engaged in defalcation, however, does not entitle Plaintiff to judgment as a matter of law; instead, the debt at issue must have arisen from that defalcation. Here, the record does not conclusively establish that all of the debt now at issue arose, for example, from Defendant's intentional conduct. There is evidence to support the possibility that Defendant made an intentional decision not to deposit certain monies, given the financial condition of the company or otherwise; this rests, however, alongside evidence that some or all of the losses at issue may have been attributable to computer crashes, or human error, albeit undefined. Moreover, the record shows that Defendant made such a decision with respect to some, but not all, of his employee's contributions. With respect to others, it appears, he avers that he failed to take steps to ensure the correction of errors not his own, or of which -- such as the unremitted interest -- he was wholly unaware. Plaintiff has presented insufficient evidence to determine as a matter of law which, if any, portions of the debt arose from anything other than innocent or negligent conduct.[8] Moreover, to the extent that Plaintiff claims that Defendant's unintentional conduct constituted defalcation, I cannot, on this record, determine that such conduct rose above the minimal threshold of culpability. Therefore, on this record and in light of applicable

---

[8]Because the chronological dots have not been sufficiently connected, it would not change the outcome of the motion if I were to accept as undisputed mixed assertions, relating to the culpability of Defendant's conduct and set forth in Plaintiff's Concise Statement of Material Facts (e.g., that Defendant dealt with assets of the Plan in his own interest or for his own account, in violation of ERISA).

standards and respective burdens, I simply cannot conclusively find the subject debt non-dischargeable.

Viewing the facts of record in the light most favorable to Defendant, a reasonable jury could conclude that Defendant believed that he was paying as required, and that some or all of his failures were either innocent or negligent. There is, therefore, a genuine issue regarding whether Defendant's conduct with respect to the particular debt at issue rose above that level, and thus constituted defalcation under the Bankruptcy Code. Under applicable standards and burdens, this issue precludes the entry of judgment in Plaintiff's favor.

*******************

### ORDER OF COURT

AND NOW, this 8th day of August, 2007, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No. [15]) is DENIED.

BY THE COURT:

_Donetta W. Ambrose_

Donetta W. Ambrose,
Chief U. S. District Judge